**FILED
CLERK**

2:53 pm, Aug 14, 2019

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JOSEPH ANANIA, JAMES ANNING, WILLIAM
BUSCHMANN, MICHAEL FISHER, NANCY
HASKELL, GERODETTE MACWHINNIE, KEITH
MARRAN, MICHAEL MCPHERSON, ROLAND
MICHELY, GARY SACKS, ROBERTA TERZO, SARA
WIDDICOMBE, JOSEPH CLINTON, MARY ELLEN
MANNING, ALISON AMRON, JUAN F. PUNCHIN,
DAVID SAHAGIAN, and GREGG SPANGLER,

                Plaintiffs,

     - against-

UNITED STATES OF AMERICA, UNITED STATES
ARMY CORPS OF ENGINEERS, COLONEL DAVID
A. CALDWELL, and COUNTY OF SUFFOLK,

                Defendants.
----------------------------------------------------------------------X

**ORDER**
16-CV-3542 (SJF)(ARL)

FEUERSTEIN, District Judge:

Pending before the Court are the objections of Plaintiffs ("Pls' Obj."), Docket Entry ("DE") [88], to the Report and Recommendation (the "Report") of the Honorable Arlene R. Lindsay, United States Magistrate, dated March 21, 2019, DE [86]. In the Report, Magistrate Judge Lindsay recommends that the motion to dismiss or alternatively for summary judgment submitted by defendants United States of America, United States Army Corps of Engineers ("USACE"), and Colonel David A. Caldwell (collectively, the "Federal Defendants"), Motion, DE [79], be granted, and that the motion for summary judgment filed by the County of Suffolk (the "County"), Motion, DE [78], be granted. Both the Federal Defendants and the County have filed papers in response to Plaintiffs' objections. For the reasons set forth below, Plaintiffs' objections are overruled, and the Report is accepted in its entirety.

## I. STANDARD OF REVIEW

Any party may serve and file written objections to a report and recommendation of a magistrate judge within fourteen (14) days after being served with a copy thereof. 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72(b)(2). Any portion of such a report and recommendation to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

A district court is not, however, required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). To accept the magistrate's report and recommendation to which no specific, timely objection has been made, the court need only be satisfied that there is no clear error apparent on the face of the record. *See* FED. R. CIV. P. 72(b); *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.2d 162, 174 (2d Cir. 2000); *Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 453 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. 2005). General objections, or "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review . . . [because] [s]uch objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal," *Owusu v. New York State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009) (alterations, quotations and citations omitted). Objections are reviewed under the clear error standard where a party has filed objections that simply restate its original arguments rather than identifying a specific error in the Report or assert only general or conclusory objections. *See, e.g., Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018) (noting that *de novo* determination is only required "to the extent that a party makes specific objections to a magistrate's findings"); *Dafeng Hengwei Textile Co. v. Aceco Indus. & Commercial Corp.,* 54 F. Supp. 3d 279, 283 (E.D.N.Y. 2014) (applying clearly erroneous standard "when a party makes

only conclusory or general objections, or simply reiterates its original arguments").

Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

## II. DISCUSSION

### A. Plaintiffs' Objections

In their objections, Plaintiffs argue that Magistrate Judge Lindsay erred in: (1) making contradictory findings that (a) FIMI is a one-time, stand-alone action, and (b) that the takings are justified because Cherry Grove "might get sand in the event of a future storm," Pls' Obj. at 2; (2) finding that the final decision on whether Cherry Grove will receive sand for the dunes "will be based on some hypothetical future surveys," *id.* at 3; (3) failing to find that there is a factual issue regarding the "extent to which notice of the unfair takings was provided to the Plaintiff" and in relying on "completely inadmissible, unauthenticated hearsay" in its findings, *id.*; (4) not determining that the easements, which implicate the dune areas, were improperly taken because there is no present or future indication that sand will be placed in those areas, *id.* at 4; (5) finding that Plaintiffs had not identified comparators for the purpose of their Equal Protection claim, *id.*; (6) failing to recognize the "serious constitutional injury that results from the patently unfair combination" of the easements and the lack of any benefit to Plaintiffs within the easement area, *id.* at 5; and (7) dismissing the claim under the Administrative Procedures Act ("APA") in that the Report "fails to address the fact that FIMI does not fulfill the Congressional mandate that it provide a response to the vulnerabilities created by [Hurricane] Sandy." *Id.* Plaintiffs' objections as listed above are set forth in the first four (4) pages of their submission. The

remaining thirty-six (36) pages are merely a resubmission of the opposition brief[1] that was previously considered by Magistrate Judge Lindsay and as such, issues raised therein are reviewed for clear error only.[2]

Upon *de novo* review of Magistrate Judge Lindsay's thorough and well-reasoned Report, all motion papers and the entire record, and consideration of Plaintiffs' objections to the Report and Defendants' responses thereto, the objections are overruled and the Report is accepted in its entirety.

Distilled to their essence, Plaintiffs' objections primarily address their contention that the perpetual easements were improperly granted given that under the project, no sand would be placed on the dunes of the Cherry Grove properties and thus the owners of those properties would derive no benefit from the project. *See, e.g.,* Pls' Obj. at 4 ("To be clear, Cherry Grove is getting no dune fill, and the dune fill is the only thing that matters here since the easements are being taken in the dune area."). Magistrate Judge Lindsay correctly found, *inter alia,* that sand may be added to the dunes under certain circumstances such as if the dune is below the mandated

---

[1] With few exceptions, pages six through forty of the Objections are identical to their Memorandum in Opposition and were simply cut and pasted from their earlier brief. Comparing the Memorandum in Opposition ("Pls' Opp."), DE [81], with the Objections, the latter deletes about six paragraphs, removes several paragraph breaks, and adds a heading. For the most part, the remaining language and formatting in the Objections are identical. For example, the two documents: use the same formatting including switching the same section from justified paragraphs to unjustified, *compare* Pls' Obj. at 35-36 *with* Pls' Opp. at 33-35; and contain the same typos such as using "Nowhere is" for "Nowhere in", *compare* Pls' Obj. at 25 *with* Pls' Opp. at 24.

[2] Within this repeated section of Plaintiffs' objections, there are only three specific references to the Report. The most comprehensive of these references is a three-sentence paragraph arguing again that the finding that the easements are justified because of possible sand replacement on the dunes is "an outright falsehood" given the limitations on the FIMI project. Pls' Obj. at 15. This objection merely restates the objection that the grant of the easements was improper. The remaining references to the Report offer no specific objections to findings or conclusions. *See* Pls' Obj. at 18, 20.

level at the time of the survey or in the event of another storm, and that the notice provided to the Plaintiffs "adequately described the FIMI Project, the potential impact on the plaintiffs' properties and afforded them a reasonable time for those interested to make their appearance." Report at 33-34.

Moreover, Plaintiffs' suggestion that they are not deriving any benefit from the project because they are not receiving any sand on their dunes is disingenuous, at best, and ignores the fact that, to paraphrase Aristotle, the whole is greater than the sum of its parts. Looking at the dune sand renourishment portion of the project in isolation overlooks the entire purpose of the plan – to protect all the Fire Island communities, including Cherry Grove, and the mainland from future storm destruction.

Plaintiffs' singular focus on the fact that Cherry Grove was slated to receive sand on only the berm under the design template selected, also ignores the other reasons why the easements were required. For example, the project sought the easements to provide ongoing government access to the affected areas for other purposes including maintenance and monitoring, a requirement that appears consistently throughout the record. FIMI calls for the monitoring and adaptive management of the project over a ten year time period, HSLRR at 102, and under the project, the state is tasked with making "semi-annual Inspections of the beach and dunes, including Beach Width Measurements, as well as before and after each tropical and extratropical storm." *Id.* at 101; *see also* FIMI Real Estate Plan, County Ex. 6, at 7 (noting that perpetual beach storm damage reduction easements are required "for property along all areas where beachfill material is placed, or could potentially be placed, during construction and renourishment operations, to allow continual access to construct, operate, maintain patrol, repair,

renourish, and replace the beach berm and dune"). The First Real Estate Fact Sheet sent to all property owners specifically advised that the easements were necessary to "maintain the ability to access the Project area to perform inspections and maintenance in order to ensure the continued benefit from the Project." Real Estate Fact Sheet at 2, County Ex. 11. In addition to the placement of sand, the easements were deemed necessary for the placement of vegetation and fencing, including fencing on the dune. *Id.* at 3. The notice clearly advised that the easements sought will "specifically state[] that it will allow the County, DEC, USACE and their representatives, agents contractors and assigns 'to construct, preserve, patrol, operate, maintain, repair, rehabilitate, and replace a public beach, and other erosion control and storm damage reduction measures . . . including the right to deposit sand, to accomplish any alterations of the contours on said land, to construct berms and dunes, and to nourish and re-nourish periodically.'" *Id.*

Not only did Plaintiffs receive notice of these reasons why the easements were necessary, the access issue was specifically addressed by the Hearing Officer in his Determination and Findings (the "Determination") approving the project and finding that the perpetual easements were necessary. Determination, County Ex.16. The determination and findings relied in part on the County's need for access to provide the required maintenance of the project. *Id.* at 12-13. Despite the notice and information provided to them, Plaintiffs did not appear at the two public hearings held under the Eminent Domain Procedure Law that preceded the Hearing Officer's Determination, nor did they seek judicial review of the Determination itself.

Plaintiffs also object that the Report fails to adequately address their APA claim because it does not directly discuss their argument that FIMI "does not fulfill the Congressional mandate

6

that it provide a response to the vulnerabilities created by [Hurricane] Sandy." They claim that Cherry Grove is the only community "being deprived of a protective dune" and that under the plan selected, other communities will receive larger amounts of sand while Cherry Grove will receive "less than one-quarter of what it lost" during Hurricane Sandy. Pls' Obj. at 38. Plaintiffs' suggestion that FIMI does not address the future of the Fire Island oceanfront is meritless. The inquiry concerning whether an agency decision was arbitrary or capricious is ultimately narrow, and "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989). As demonstrated by the HSLRR and supporting documentation, the USACE thoroughly reviewed several options and provided a reasonable explanation for the design chosen. As the Report repeatedly notes, the reason that the Cherry Grove properties are to receive sand for the berm but not on the dunes is that the dunes at these properties are already at the height set in the medium design template selected by the USACE while the berm requires additional sand to meet the project requirements. In other words, Cherry Grove is not being "deprived" of a dune, but rather already has a dune at the height the USACE has determined to be appropriate for the project. The mere fact that Plaintiffs disagree with the agency decision of which plan to implement does not warrant a finding that the decision was arbitrary or capricious.

**B. Remainder of the Report**

Magistrate Judge Lindsay recommended, *inter alia,* that the Federal Defendants' motion to dismiss Counts I, II, and III be granted for lack of subject matter jurisdiction as there has been

no waiver of sovereign immunity, that the claims against Colonel Caldwell in his personal capacity be dismissed for failure to allege his personal involvement in any act, and that the County's motion to dismiss the First Amendment claim be granted. Plaintiffs have raised no objections with respect to these findings and conclusions. Having found no clear error on the face of the Report with respect to the findings and conclusions of Magistrate Lindsay to which no specific objections were raised, those portions of the Report are accepted in their entirety.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' objections are overruled and the Report is accepted in its entirety, and, for the reasons set forth therein, both the Federal Defendants' motion to dismiss and for summary judgment, DE [79], and the County's motion for summary judgment, DE [78], are granted. The Clerk of the Court shall enter judgment in accordance with this Order and close the case.

**SO ORDERED**.

/s/
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
August 14, 2019

.