UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JOSEPH ANANIA, JAMES ANNING, WILLIAM
BUSCHMANN, MICHAEL FISHER, NANCY
HASKELL, GERODETTE MACWHINNIE, KEITH
MARRAN, MICHAEL MCPHERSON, ROLAND
MICHELY, GARY SACKS, ROBERTA TERZO,
SARA WIDDICOMBE, JOSEPH CLINTON, MARY
ELLEN MANNING, ALISON AMRON, JUAN F.
PUNCHIN, DAVID SAHAGIAN, and GREGG
SPANGLER,

                      Plaintiffs,

        v.

UNITED STATES OF AMERICA, UNITED STATES
ARMY CORPS OF ENGINEERS, COLONEL
DAVID A. CALDWELL, and COUNTY OF SUFFOLK,

                   Defendants.
--------------------------------------------------------------------X

**FILED**
**CLERK**

10:51 am, Jan 08, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM & ORDER**
16-CV-3542 (SJF) (ARL)

FEUERSTEIN, District Judge:

       Currently before the Court is a motion for attorneys' fees filed by Defendant County of

Suffolk (the "County") pursuant to 42 U.S.C. § 1988.  *See* Motion, Docket Entry ("DE") [96].

For the reasons set forth below, the motion is granted in part and denied in part.

## I.     BACKGROUND

       Familiarity with the facts of this matter is assumed.[1]  The facts set forth herein are

repeated to the extent necessary to address the pending motion.

       Plaintiffs own waterfront property in the Cherry Grove community on Fire Island and

claimed that the Defendants violated their rights in connection with the design and

implementation of the Fire Island Inlet to Moriches Inlet Fire Island Stabilization Beach

---

[1] A comprehensive recitation of the facts can be found in prior orders including Magistrate Judge Arlene
R. Lindsay's Report and Recommendation (the "R56 Report") dated March 21, 2019, *see* DE [86], 2019
WL 6388847, as well as this Court's Order of August 14, 2019, adopting the Report's recommendation of
dismissal.  *See* DE [93], 2019 WL 3811899.

Restoration Project (the "FIMI Project").  Plaintiffs asserted various claims including, *inter alia,* claims of violations of the United States Constitution.   As to the County, they claimed that it violated:  (1) their rights to equal protection under the Fourteenth Amendment (the "Equal Protection claim"); (2) their rights to procedural due process under the Fourteenth Amendment (the "Due Process claim"); and (3) their rights under the First Amendment (the "First Amendment claim").  The Equal Protection claim alleged that the County required Plaintiffs to grant perpetual easements over their property despite those properties having been allegedly excluded from the dune restoration provisions of the FIMI Project, while the Due Process claim alleged that the County failed to notify them about critical information about the project, thus depriving them of the opportunity to object at various points of the project's approval process.

The First Amendment claim, parenthetically entitled "Chilling of First Amendment Rights," was added when the complaint was amended in December 2016.  *See* Amended Complaint ("Am. Compl."), ¶¶ 93-97.  DE [29].  This claim was premised upon the assertion that Cherry Grove is "the first openly gay, lesbian, bisexual and transgender town in the United States," *id.* ¶3, and that Plaintiffs are members "of a segment of society that has been historically discriminated against, including by and through acts of government repression and regulation of conduct." *Id.* ¶95.  They went on to claim, by way of a partial, incomplete statement, that they had a "genuine fear that the easements being imposed upon them unnecessarily confer upon the governmental easement holders." *Id.* ¶96.  As a result, they claimed their "rights to freely associate, to free expression, and to privacy . . . are threatened and injured by the defendants' contemplated government actions."  *Id.* ¶97.

This Court declined to sign Plaintiffs' proposed temporary restraining order, *see* Minute Entry, DE [55], and denied their motion for a preliminary injunction.  *See* Order, DE [63].   The

2

County moved for judgment on the pleadings, *see* DE [40], which motion was referred to Magistrate Judge Lindsay for report and recommendation.   Magistrate Judge Lindsay recommended, *inter alia,* that the County's motion be converted to a motion for summary judgment.  *See* Report and Recommendation, DE [64].

Plaintiffs' lone objection to the Magistrate Judge's report concerned the recommendation that no additional discovery was necessary to address the motions.  Plaintiffs' Objections, ¶3, DE [67].  Plaintiffs acknowledged that a substantial number of documents had been submitted, but argued that documents procured through FOIL/FOIA requests and through publicly available sources do not constitute "the same targeted extraction of relevant materials that the Federal Rules contemplate and provide for in the ordinary course of litigation."  *Id.*  They did not, however, identify any specific items of discovery that they wished to pursue.

This Court adopted the report and recommendation, *see* Memorandum & Order, DE [69], and the County was directed to resubmit its motion as one for summary judgment.  The County's motion for summary judgment, DE [78], was referred to Magistrate Judge Lindsay for report and recommendation.  The Magistrate Judge recommended that the motion be granted.  *See* R56 Report.

Plaintiffs filed objections to the R56 Report.  Plaintiffs' Objections, DE [88].  Plaintiffs' objections, which were summarized in this Court's order of August 14, 2019, *see* Order DE [93], addressed, *inter alia,* their Due Process and Equal Protection claims. Plaintiffs did not, however, object to the recommendation that the First Amendment claim be dismissed.  This Court

overruled Plaintiffs' objections and adopted the R56 Report in its entirety.  *See* Order, DE [93].[2]

The County's instant motion for attorneys' fees followed.

## II.    APPLICABLE LAW

Pursuant to §1988, a court may, in an exercise of its discretion, award attorneys' fees to a "prevailing party" in an action brought under § 1983.  While defendants  may be awarded attorneys' fees under §1988, such an award is appropriate "only if the plaintiff's claim was frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so." *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir. 1994) (internal quotation marks, alteration, and citations omitted).  "A claim is frivolous where it lacks an arguable basis either in law or in fact." *Shakur v. Selsky,* 391 F.3d 106, 113 (2d Cir. 2004) (internal quotation marks and citation omitted).  "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980).   The Supreme Court has cautioned that "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421-22, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978).   "A prevailing defendant need not show bad faith by a plaintiff to be entitled to attorneys' fees, though such a showing provides an even stronger basis for the award." *Panetta v. Crowley,* 460 F.3d 388, 399 (2d Cir. 2006) (internal quotation marks and citation omitted).

---

[2] Magistrate Judge Lindsay's recommendation that the claims against the federal defendants be dismissed was also accepted.

In practice, "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." *Sista v. CDC Isix N. Am., Inc.,* 445 F.3d 161, 178 (2d Cir. 2006); *see also Nardoni v. City of New York,* No. 17 CIV 2695, 2019 WL 542349, at *7 (S.D.N.Y. Feb. 12, 2019) (noting that the Supreme Court "has discouraged the awarding of attorney fees and costs where the defendant is the prevailing party"), *adopted by* 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019); *Jones v. Bay Shore Union Free Sch. Dist.,* No. 12-CV-4051, 2017 WL 9512405, at *2 (E.D.N.Y. Aug. 22, 2017) ( "[t]he cases set a high bar for recovery of attorneys' fees by a prevailing defendant in the civil rights context"), *adopted by* 2017 WL 3981298 (E.D.N.Y.  Sept. 11, 2017).  The hesitancy to award defendant attorneys' fees arises from concerns "about the potential chilling effect on section 1983 plaintiffs—who are the chosen instrument of Congress to vindicate a policy of national priority."  *Rounseville,* 13 F.3d at 631 (internal quotation marks and citation omitted).

## III.   DISCUSSION

### A.  Award of Attorneys' Fees

Upon review of this case, the Court declines to exercise its discretion to award attorneys' fees to County arising from its defense of the Equal Protection and Due Process claims, finding that those claims do not meet the necessary standard supporting an award of such fees.  The Plaintiffs' First Amendment claim, however, was frivolous and thus an award of attorneys' fees necessary to defend that claim is warranted.

Based on their presentation of the First Amendment claim throughout this litigation, it is clear that the claim was pressed almost as an afterthought with no factual or legal basis.  The claim was not included in the original complaint, and as pled in the Amended Complaint, the First Amendment claim was speculative and conclusory, lacking any factual allegations.  Their

5

arguments raised in response to the motions were equally perfunctory, lacking in substance and merit.   In both their opposition to the County's motions under Rule 12(c) and Rule 56, Plaintiffs submitted a single, identical paragraph constituting their arguments in support of their First Amendment claim.  *See*  Plaintiffs' Memorandum of Law in Opposition to Suffolk County's Rule 12(c) Motion, at 24, DE [41]; Plaintiffs' Memorandum of Law in Opposition to [Defendants'] Dispositive Motions, at 32-33, DE [81].  They did not provide legal argument for their claim, nor did they submit any non-speculative factual content that concerns any of these particular Plaintiffs.  They merely theorized that some unspecified governmental agency might use the easements to "patrol" their properties and censure their rights, "as members of the LGBT community," to privacy, to freely associate, and to free expression.  Their generalized basis for this speculation was (1) the "long history in this country of oppression of the rights of homosexuals," and (2) the "longstanding and increasing tension between certain members of the LGBT community in Cherry Grove and the National Park Service which patrols the neighboring Fire Island National Seashore and frequently tickets, threatens, or intimidates those engaged in the activities accepted and celebrated in gay culture."

Plaintiffs raised no objection to the Magistrate Judge's recommendation that the First Amendment claim be dismissed.  Finally, in opposition to this motion, Plaintiffs argue, *inter alia,* that generally, their claims were "grounded in fact," and were supported "with expert proof."  Plaintiffs' Memorandum of Law in Opposition  at 16, DE [98].  These generalities pertain to the issues of the sand replacement under the FIMI Project and the confusion Plaintiffs purportedly experienced during the approval process.  Plaintiffs make no reference, express or implied, to the First Amendment claim much less argue that the claim was not frivolous.

While the Court is not insensitive to the history of the treatment of members of the LGBTQ community in this country, a particular plaintiff must adduce evidence that such treatment is actually occurring in the case presented by that plaintiff.  Plaintiffs here offer only speculation and, even in opposition to the summary judgment motion, failed to present a single fact suggesting that they had a viable claim. On this record, the Court finds that the First Amendment claim was frivolous, unreasonable, and without foundation, and thus an award of attorneys' fees is warranted.

Where it is determined that there were both frivolous and non-frivolous claims, "Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim." *Fox v. Vice,* 563 U.S. 826, 836, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011).  Attorney costs related to the drafting of sections seeking dismissal of First Amendment claim would clearly not have been incurred but for the frivolous claim.  Further, the claim is not intertwined with the other claims such that the County would have incurred those same fees to defend the non-frivolous claims.  Accordingly, the County's motion for attorneys' fees is granted only to the extent of those fees incurred in defending Plaintiffs' First Amendment claim.

**B.  Amount of Fee Award**

The County seeks a total amount of fees in the amount of $476,878.90 .  The Court will first consider the reasonableness of the fees sought and then determine the extent to which those fees may be allocated to defense of the First Amendment claim.

The determination of a reasonable fee lies with the Court.  In this Circuit, "the lodestar— the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of*

*Albany,* 522 F.3d 182, 183 (2d Cir. 2008)).  In calculating the presumptively reasonable fee, the court looks to what a reasonable, paying client would be willing to pay, "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190.  A party seeking an award of attorneys' fees must submit contemporaneous time records that indicate "for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).   In support of this motion, the County has provided an affidavit and the relevant billing records.  *See* Affidavit of Services of John R. Casolaro ("Casolaro Aff"), DE [96-9].

In recent § 1983 cases, courts in this District have set reasonable hourly rates at approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$100 for paralegals.  *See Murray v. Marshall,* No. 15-CV-500, 2020 WL 5899851, at *2 (E.D.N.Y. Mar. 16, 2020), *adopted as modified by* 2020 WL 3819075 (E.D.N.Y. July 8, 2020); *Haylett v. Sutton,* No. 15-CV-223, 2019 WL 8128547, at *3 (E.D.N.Y. Aug. 8, 2019), *adopted by* 2020 WL 1061406 (E.D.N.Y. Mar. 5, 2020); *Martinez v. City of New York,* 330 F.R.D. 60, 70 (E.D.N.Y. 2019).  Applying these standards, the hourly rates charged by defense counsel must be adjusted.

While Mr. Casolaro is a partner with many years' experience, he has presented no specialized expertise warranting an upward departure from the top rate awarded in this District. His hourly rate is reduced to $450.  Two professionals, Lee Ohliger and Alexander Malyshev, are "of counsel" to the firm.  Mr. Ohliger has practiced law since 1981 and has some demonstrated some experience in relevant areas of the law.  His hourly rate will also be capped at $450.  Mr. Malyshev, however, is described only as "counsel in the litigation department" who

has been "practicing law since 2010." Casolaro Aff. at ¶5(c). Given the lack of detail, a senior associate rate of $300 is appropriate.

Two associates billed time on this matter. Michael Bauscher, an associate in the litigation department, has been practicing law since 2011. Beyond his experience in representing "a number of condemnors in various matters," Casolaro Aff. at ¶5(d), the County has provided no detail suggesting that the upper hourly rate is reasonable. Mr. Bauscher's hourly rate will be set at a mid-senior associate level of $250. Another professional, Elaine Nguyen is identified summarily as "an associate in the litigation department." *Id.* at ¶5(e). Absent any information regarding the length and breadth of Ms. Nguyen's experience, the lowest hourly rate for a junior associate, $100, will be used.

Defendants further seek an award of billings made by Managing Attorneys Dennis Murphy and Antonio Malaspina, as well as paralegal Bill Borenstein. An hourly rate of $100 will be applied for each of these individuals.

The following summary applies the adjusted hourly rates to the hours billed:

| Billing Prof'l | Total Hours | Adj. Hourly Rate | Amount |
|---|---|---|---|
| J. Casolaro | 349.80 | $450 | $157, 410.00 |
| L. Ohliger | 317.70 | $450 | $142,965 .00 |
| M Bauscher | 432.70 | $250 | $108,175.00 |
| A. Malyshev | 9.00 | $300 | $2,700.00 |
| E. Nguyen | 99.8 | $100 | $9,980.00 |
| D. Murphy | .90 | $100 | $90.00 |
| A. Malaspina | 11.6 | $100 | $1,160 |
| B. Borenstein | 27.50 | $100 | $2,850.00 |
| **TOTALS:** | **1149.2** | | **$425,230.00** |

Turning to whether the hours expended were reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich,* No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d

1146, 1153 (2d Cir. 1992)).  Hours that are excessive, redundant, or otherwise unnecessary to the litigation should be excluded. *See Hensley v. Eckerhart,* 461 U.S. 424, x, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  In addition, the use of block billing, which makes it difficult for a court to assess the reasonableness of the work billed, may warrant reductions.  *See Kindle v. Dejana,* 308 F. Supp. 3d 698, 704-05 (E.D.N.Y. 2018); *see also Bhungalia Family, LLC v. Agarwal,* 317 F. Supp. 3d 727, 742 (S.D.N.Y. 2018) (the use of block billing "hinders this Court's ability to understand how much time was devoted to particular tasks, so as to determine whether that time was reasonably spent.").  To remedy these billing issues, district courts have the authority to "make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *Green v. City of New York,* 403 F. App'x 626, 630 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also T.S. Haulers, Inc. v. Cardinale,* No. 09 CV 0451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (the court may exclude "excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours.").

Upon review of the contemporaneous billing records provided, the Court determines that a 25% across-the-board fee cut is appropriate to address issues including block billing and duplicate billings created by numerous interoffice consultations between billing professionals. Making this adjustment, the presumptively reasonable fee is set at $318,922.50.

Having established the amount of the reasonable fee, the portion of that fee that was attributable to the County's defense of the First Amendment claim must be determined.  The County did not request its fees on a claim-by-claim basis and the billing records themselves do not break down the work performed by claim. Looking to the papers submitted by the County on their motions, it is clear that the defense was understandably focused on Plaintiffs' viable claims

10

to a far greater degree than the First Amendment claim.  Of the 127 pages of briefing submitted

by the County in support of its motion for judgment on the pleadings and motion for summary

judgment, *see* DEs [40-1], [42], [78], [82], approximately eight (8) pages, or about 6.3%, were

devoted to Plaintiffs' First Amendment claim.  As the billing records do not support a

determination that the amount of time expended was greater, the Court in its discretion finds that

an award of 6% of the total amounts billed is appropriate.  Accordingly, the County is awarded

**$19,135.35** in attorneys' fees.

## IV.    CONCLUSION

For the reasons set forth above, the County's motion [96] is granted to the extent that it is

awarded **$19,135.35** in attorneys' fees expended as to the First Amendment claim and denied in

all other regards.

**SO ORDERED**.


  /s/ *Sandra J. Feuerstein*
  Sandra J. Feuerstein
  United States District Judge


Dated: Central Islip, New York
       January 8, 2021